UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ELEANOR HOWARD, | } |
| Plaintiff, | } |
| v. | } Case No.: 1:22-cv-01493-RDP |
| SECRETARY, DEPARTMENT OF HOMELAND SECURITY, | } |
| Defendant. | } |

## MEMORANDUM OPINION

This matter is before the court on Defendant's Motion to Dismiss Amended Complaint. (Doc. # 20). Plaintiff has responded to the Motion (Doc. # 24) and Defendant has filed a reply (Doc. # 25). For the reasons discussed below, Defendant's Motion is due to be granted in part.

Plaintiff Eleanor Howard has sued the Secretary of the Department of Homeland Security regarding her employment with that governmental organization. (Doc. # 17). Plaintiff's Complaint asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Fourteenth Amendment to the United States' Constitution. (*Id*. at 1-2). Plaintiff asserts that she was discriminated against on the basis of her race, was retaliated against, and was subjected to a hostile work environment. (*Id*. at 3).

**I.  Background**

The allegations Plaintiff makes in her First Amended Complaint can be summarized as follows:

Plaintiff's supervisors, including Gail LeStourgeon, Betty Sarrels, and Nancy McCaskey "discriminated against her by harassing her and creating a hostile work environment" (Doc. # 17 at ¶ 15) and "discriminated against her based on her race, color and prior EEO activity." (*Id*. at ¶

16). Plaintiff presents a laundry list of complaints about how she was mistreated. She claims Defendants "subject[ed] her to extra and unfair scrutiny in her day-to-day job assignment," "subject[ed] her to attempted unjustified discipline including but not limited dismissal from the disaster prematurely without legal cause or a valid basis," "den[ied] her promotional opportunities, opportunities for advancement and professional development, including but not limited [to] denying her direction and resources to do her job as assigned on a daily basis," "refus[ed] to assist her with completion of her Performance Task Book (PTB) or signing off on it," "refus[ed] her salary increases and bonuses," "issued [her] a negative and false performance evaluation," and "discharge[d her] from the unit." (*Id*. at ¶¶ 15-21). Plaintiff alleges that race, color, and her prior EEO activity were motivating factors in LeStourgeon's treatment of her. (*Id.*). Plaintiff also learned that LeStourgeon had disclosed to other employees that Plaintiff had a history of filing grievances. (*Id*. at ¶ 63).

Another Ordering Unit Lead, Dan Colon, confirmed that LeStourgeon told him about Plaintiff's prior EEO complaints. (*Id*. at ¶¶ 64-66). Colon evaluated Plaintiff positively because he perceived her to have satisfactory performance, as did another co-worker of Plaintiff's. (*Id*. at ¶¶ 69, 73-74). Despite her experience and performance history as an ordering manager, Plaintiff was not considered for the Ordering Unit Lead position vacated by LeStourgeon, and the job was filled by a white female. (*Id*. at ¶¶ 70-71).

Plaintiff claims she was subjected to a pattern and practice of discrimination and retaliation since her complaint of discrimination and harassment against the agency on June 5, 2017. (*Id*. at ¶ 82). Other employees allegedly observed a pattern of harassment against Plaintiff and a pattern of discriminatory treatment, generally. (*Id*. at ¶¶ 75-81).

Documents submitted by the parties reveal the following:

Plaintiff contacted an EEO Counselor on January 30, 2018. (Doc. # 5-1 at 2). On March 8, 2018, Plaintiff filed a Complaint of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). (Doc. # 1 at ¶ 8; Doc. # 1-1 at 2-3; Doc. # 5-1). In her EEO Complaint, Plaintiff alleged that she was discriminated against on the basis of her race and color, and was retaliated against. (Doc. # 5-1; Doc. # 1-1 at 2). She indicated that her prior EEO activity occurred over a four year period between July 2013 and August 2017. (Doc. # 5-1 at 2). The investigation into Plaintiff's EEO Complaint appears to have focused on her January 11, 2018 negative performance evaluation. (Doc. # 1-1 at 2-3).

After Plaintiff was provided a report of the investigation into her claims, on June 13, 2019, Plaintiff filed a Hearing Request. (Doc. # 13). In her Hearing Request, Plaintiff listed her claims as harassment, disparate treatment, false evaluation, denial of promotion, upward mobility, and failure to train. (*Id*. at 4). She alleged that she was discriminated against on the bases of her race, color, sex, age, and retaliation (*Id*.). However, in the end, both parties submitted motions for a decision without a hearing. (Doc. # 1-1 at 3).

On August 12, 2020, the Administrative Judge ("AJ") issued a decision finding that Plaintiff had failed to establish a prima facie case of discrimination or reprisal because the alleged action did not result in any harm to her so as to render her aggrieved. (Doc. # 1-1 at 3). With regard to retaliation, the AJ found that Plaintiff had failed to establish a nexus between her prior protected activity and the alleged action. (*Id*.).

On October 3, 2020, Plaintiff filed an appeal of the AJ's decision. (*Id*.). On appeal, the Agency issued a final order adopting the AJ's concluding that Plaintiff had failed to prove that the Agency subjected her to discrimination. (*Id*.). Plaintiff then appealed to the EEOC. (*Id*.).

The EEOC found that the evaluation in question was merely an interim evaluation that was not maintained in Plaintiff's personnel file and that the Agency removed the negative comments contained in the evaluation the day after Plaintiff complained. (*Id*. at 4). The EEOC further found that Plaintiff had not made certain critical showings. That is, she failed to establish that she was subjected to unwelcome verbal or physical conduct involving her membership in any protected class, that the harassment complained of was based on her statutorily protected classes, or that the harassment had the purpose or effect of unreasonably interfering with her work performance and/or creating an intimidating, hostile, or offensive work environment. (*Id*.). With respect to retaliation, the EEOC determined that Plaintiff's prior EEO activity occurred "during the Hurricane Sandy deployments [] in 2012, and that[, in any event,] Plaintiff had failed to establish a nexus between the 2012 protected activity and 2018 interim evaluation." (*Id*.). Therefore, on August 29, 2022, the EEOC affirmed the Agency's Final Order. (Doc. # 1-1).

On November 27, 2022, Plaintiff filed her initial Complaint in this case. (Doc. # 1). At the court's direction, she filed her First Amended Complaint on May 21, 2023. (Doc. # 17).

**II.  Standard of Review**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12(b)(6)

4

motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller*, *Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

**III.    Analysis**

Plaintiff's First Amended Complaint contains four counts: (1) Count I: Title VII – Racial Discrimination; Count II: (2) Title VII – Retaliation and Reprisal 42 U.S.C. §2000e et seq., 42 U.S.C. §1981 and 1981A, and 42 U.S.C. 2000e-5(b); (3) Count IV [sic]: Title VII – Hostile Work Environment; and (4) Count V: Equal Protection of the Law - Violation of the 14th Amendment. (Doc. # 17 at ¶¶ 87-118).

### A.     Plaintiff's Complaint Remains a Shotgun Pleading

"A party must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Plaintiff's First Amended Complaint contains four substantive counts. Although Plaintiff amended her Complaint so that the First Amended Complaint no longer "re-allege[s] and incorporate[s] by reference" every allegation in every count, it is still unclear what personnel practice is at issue in each count.[1] It still appears that each count relates to multiple employment actions, and the First Amended Complaint is still vague about the dates most of the alleged actions took place. Furthermore, many of the alleged "facts" in the First Amended Complaint are still wholly conclusory. (*See, e.g*., Doc. # 17 at ¶ 17) (Defendants "discriminated against her based on her race, color, and prior EEO activity by denying her promotional opportunities, opportunities for advancement and professional development, including but not limited denying her direction and resources to do her job as assigned on a daily basis.").

---

[1] "[A] statutory provision governing federal employment" defines "personnel action" to include "most employment-related decisions." *Babb v. Wilkie*, 140 S. Ct. 1168, 1170 (2020) (citing 5 U.S.C. § 2302(a)(2)(A)). Section 2302(a)(2)(A)) states that "'personnel action' means –
    (i) an appointment;
    (ii) a promotion;
    (iii) an action under chapter 75 of this title or other disciplinary or corrective action;
    (iv) a detail, transfer, or reassignment;
    (v) a reinstatement;
    (vi) a restoration;
    (vii) a reemployment;
    (viii) a performance evaluation under chapter 43 of this title or under title 38;
    (ix) a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in this subparagraph;
    (x) a decision to order psychiatric testing or examination;
    (xi) the implementation or enforcement of any nondisclosure policy, form, or agreement; and
    (xii) any other significant change in duties, responsibilities, or working conditions."
5 U.S.C. § 2302(a)(2)(A).

Plaintiff's Title VII – Racial Discrimination claim (Count I) is based on numerous incidents occurring over a span of years. (Doc. # 17 at ¶¶ 87-94). As the court previously noted, Plaintiff's Title VII Retaliation claim (now Count II) (*Id.* at ¶¶ 95-102) still "appears to state a retaliation claim under both Title VII and 42 U.S.C. § 1981, again related to multiple alleged adverse employment actions." (Doc. # 16 at 9). Plaintiff's Hostile Environment (Count IV) claim asserts a hostile environment based both on her race and her prior EEO activity. (Doc. # 17 at ¶¶ 103-110). However, the dearth of actual facts alleged in the First Amended Complaint leaves it unclear whether Plaintiff asserts that she was subjected to a racially hostile environment, a retaliatory hostile environment, or just a hostile environment based on a factor other that race or retaliation.

"A complaint that fails to comply with Rules 8 and 10 may be classified as a 'shotgun pleading.'" *Luft v. Citigroup Glob. Mkts. Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015). The Eleventh Circuit has repeatedly and forcefully condemned shotgun pleadings. *See Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1356 n.3 (11th Cir. 2020). There are four basic categories of shotgun pleadings: 1) those in which "each count adopts the allegations of all preceding counts;" 2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; 3) those that do not separate each cause of action or claim for relief into a different count; and 4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to ... give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see also Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018) ("[W]e 'have little tolerance for

7

shotgun pleadings.'"). Plaintiff's First Amended Complaint has elements of the second category, and still falls into the third category.

The Eleventh Circuit strongly encourages "a district court that receives a shotgun pleading [to] strike it and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading." *Est. of Bass*, 947 F.3d at 1358. Therefore, the court will allow Plaintiff one final opportunity to replead any potentially viable claims in her First Amended Complaint. In doing so, Plaintiff should make clear the personnel action at issue in each claim rather than lumping all allegedly discriminatory acts in one claim. This will allow the court and the Defendant to know what challenged conduct is at issue in each claim and when that challenged conduct occurred.

### B.  Plaintiff's Equal Protection Claim Fails to State a Claim

Plaintiff's Equal Protection claim (Count V [sic]) is specifically asserted under the Fourteenth Amendment to the United States Constitution. (Doc. # 17 at 20). However, Plaintiff worked for the United States Department of Homeland Security – and more specifically the Federal Emergency Management Agency ("FEMA"). (Doc. # 17 at ¶ 1).

The Fourteenth Amendment provides that no *state* shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Fifth Amendment applies similar limits to the actions of the federal government. U.S. Const. Amend. V. That is, the Fourteenth Amendment applies only to states and state actors[2] *Toenniges v. AIG*, 2010 WL 11562050, at *3 (N.D. Ga. Dec. 9, 2010). Defendant here is a federal actor. Therefore, Plaintiff's Fourteenth Amendment claim fails to state a claim against it.[3]

---

[2] The Fifth Amendment applies to the federal government, while the Fourteenth Amendment applies to state actors. *See, e.g., Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1241 n. 4 (11th Cir.2003).

[3] In circumstances like this, a court is not tasked with rewriting a deficient pleading. *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014).

## IV. Conclusion

For all of the foregoing reasons, the court concludes that Defendant's Motion to Dismiss Amended Complaint (Doc. # 20) is due to be granted in part to the extent that Plaintiff's Equal Protection claim under the Fourteenth Amendment to the United States Constitution (Count V) is due to be dismissed with prejudice. Plaintiff's Amended Complaint (Doc. # 17) is due to be stricken and a further amended Complaint shall be filed which remedies the shotgun pleading issues discussed above.

**DONE** and **ORDERED** this October 18, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE