# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **ELEANOR HOWARD,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 1:22-cv-01493-RDP |
| **SECRETARY, DEPARTMENT OF HOMELAND SECURITY,** | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

This matter is before the court on Defendant's Motion to Dismiss Second Amended Complaint. (Doc. # 34). Plaintiff has responded to the Motion (Doc. # 35) and Defendant has filed a reply (Doc. # 36). After careful review, and for the reasons discussed below, Defendant's Motion is due to be granted.

Plaintiff Eleanor Howard has sued the Secretary of the Department of Homeland Security under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. (Doc. # 32). Plaintiff's Second Amended Complaint ("SAC") is her third effort to state her claims. (*Id*. at 1-2). Plaintiff asserts that she was discriminated against on the basis of her race, was retaliated against, and was subjected to a hostile work environment. (*Id*. at 1-3).

### I. Background

Plaintiff's claims in this case center on actions that occurred during her Austin, TX disaster deployment, which lasted from August 28, 2017 through July 2018[.]" (Doc. # 32 at ¶ 24).

Prior to this deployment, "on June 15, 2017, [an] EEOC Administrative Judge [] issued an Order [] finding Defendant [] liable for race, sex, and color discrimination, retaliation, and creating a hostile work environment towards Plaintiff[.]" (*Id*. at ¶ 20).

When Plaintiff first arrived at the Texas disaster assignment, her supervisor, Gail LeStourgeon, denied her a desk and office space within the Logistics Ordering unit with the other ordering unit personnel. (*Id.* at ¶ 37). Despite her requests for assistance, "LeStourgeon refused to assist [Plaintiff] with completion of her Performance Task Book (PTB) or signing off on it[.]" (*Id.* at ¶¶ 38, 43, 44). Thereafter, she alleges that "[i]solation from training, direction, education, PTB assistance, and guidance by LeStourgeon, impeded [Plaintiff]'s qualifications and consideration for promotion and negatively affected her performance evaluations[.]" (*Id.* at ¶ 39). Thereafter, "LeStourgeon [] subjected [her] to unwarranted scrutiny and interference with her day-to-day job assignment during the" deployment. (*Id.* at ¶ 28).

"LeStourgeon assisted and signed off on Performance Task Books for others[.]" (*Id.* at ¶ 40). "Because LeStourgeon would not sign off on Plaintiff's Task Book(s) (PTB) or assist her with it, [Plaintiff] was ineligible for routine raises, promotions, bonuses, awards, and or other benefits." (*Id.* at ¶ 45). Plaintiff "received no promotions, salary increases, awards or bonuses" during the deployment. (*Id.* at ¶ 42).

"On January 12, 2018, [] LeStourgeon, issued [Plaintiff] a low performance appraisal[.]" (*Id.* at ¶ 29). "In the same personnel performance rating, [] LeStourgeon issued Plaintiff [] an employment end date of January 19, 2018[.]" (*Id.* at ¶ 30). The performance appraisal rated Plaintiff as "achieves expectations" in all categories, but contained negative comments. (Doc. # 32-3). Plaintiff was thereafter told she did not need to demobilize. (Doc. # 32 at ¶ 35).

Plaintiff contacted an EEO Counselor on January 30, 2018. (Doc. # 5-1 at 2).

LeStourgeon left the deployment in February 2018. (*Id.* at ¶ 47). "In February 2018, Betty Sarrels (Caucasian, no prior EEO activity), was promoted to Ordering Unit Lead." (*Id.* at ¶ 36).

2

Don Colon later joined the same deployment, and that occurred after Plaintiff's Complaint about the bad evaluation she received from LeStourgeon. (Doc. # 32-7 at 3-4). Upon his arrival, Plaintiff was upset. (*Id*. at 4). At some point Colon "conducted an evaluation on her and it was positive as she was performing satisfactorily." (*Id*.).

"On March 8, 2018, [Plaintiff] filed an EEO complaint alleging that the Agency discriminated against her on the bases of race (African American), color (Black), and reprisal for prior protected EEO activity under Title VII of the Civil Rights Act of 1964 when, on January 11, 2018, Complainant's supervisor issued her a negative performance evaluation that contained a date for demobilizing." (Doc. # 1-1 at 2-3). The investigation into Plaintiff's EEO Complaint focused on her January 11, 2018 negative performance evaluation. (Doc. # 36-2 at 1-2, 4, 11).

During the investigation into Plaintiff's complaint, "Lora Carter (Caucasian, no prior EEO Activity) submitted an affidavit [] in which she stated I do know that it appeared to be some sort of racial issue within the unit. This is based on the fact that every single person that was African American was demobilized or sent somewhere else by Gail LeStourgeon.'" (Doc. # 32 at ¶ 61 (quoting Doc. # 32-8 at 3)).

After Plaintiff was provided a report of the investigation into her claims, on June 13, 2019, Plaintiff filed a Hearing Request. (Doc. # 13). In her Hearing Request, Plaintiff listed her claims as harassment, disparate treatment, false evaluation, denial of promotion, upward mobility, and failure to train. (*Id*. at 4). She alleged that she was discriminated against on the bases of her race, color, sex, age, and retaliation (*Id*.). Both parties submitted motions for a decision without a hearing. (Doc. # 1-1 at 3).

On August 12, 2020, the Administrative Judge ("AJ") issued a decision finding that Plaintiff had "failed to establish a prima facie case of discrimination or reprisal because the alleged

action did not result in any harm to [her] so as to render her aggrieved." (Doc. # 1-1 at 3). With regard to retaliation, the AJ found that Plaintiff had "failed to establish a nexus between her prior protected activity and the alleged action." (*Id.*).

On October 31, 2020, Plaintiff appealed the AJ's decision. (*Id.* at 1). On appeal, the Agency issued a final order adopting the AJ's findings and concluding that Plaintiff had failed to prove that the Agency subjected her to discrimination. (*Id.* at 3-4). Plaintiff then appealed to the EEOC. (*Id.*).

The EEOC found that the evaluation in question was merely an interim evaluation that was not maintained in Plaintiff's personnel file and, in any event, that the Agency removed the negative comments contained in the evaluation the day after Plaintiff complained. (*Id.* at 4). The EEOC further found that Plaintiff had not established (1) that she was subjected to unwelcome verbal or physical conduct involving her membership in any protected class, (2) that the harassment complained of was based on her statutorily protected classes, or (3) that the harassment had the purpose or effect of unreasonably interfering with her work performance and/or creating an intimidating, hostile, or offensive work environment. (*Id.*). With respect to retaliation, the EEOC determined that Plaintiff's prior EEO activity occurred "during the Hurricane Sandy deployments [] in 2012, and that[, in any event,] Plaintiff had failed to establish a nexus between the 2012 protected activity and 2018 interim evaluation." (*Id.*). Therefore, on August 29, 2022, the EEOC affirmed the Agency's Final Order. (Doc. # 1-1 at 4, 6).

On November 27, 2022, Plaintiff filed her initial Complaint in this case. (Doc. # 1). At the court's direction, she filed her First Amended Complaint on May 21, 2023. (Doc. # 17). At the court's further direction, she filed her SAC on November 13, 2023. (Doc. # 32).

## II.     Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

**III.     Analysis**

Plaintiff's SAC contains three counts: (1) Count I: Title VII – Racial Discrimination; (2) Count II: Title VII – Retaliation and Reprisal For Prior EEO Activity in Violation of 42 U.S.C. §2000e et seq., 42 U.S.C. §1981 and 1981A, and 42 U.S.C. 2000e-5(b);  and (3) Count III: Title VII – Hostile Work Environment Based on Race and/or Retaliation. (Doc. # 32 at ¶¶ 62-110).

**A.     Plaintiff's Complaint Remains a Shotgun Pleading**

Count One of Plaintiff's SAC realleges virtually every previous allegation in the body of the SAC preceding it. (Doc. # 32 at ¶ 62). Count One is a disparate treatment claim based on numerous alleged employment actions, including:

1. Not being afforded education or training (*Id*. at ¶ 66);
2. Being subjected to significant change in duties, responsibilities, or working conditions (*Id*. at ¶ 67);
3. Not being selected for a promotion (*Id*. at ¶ 68); and
4. Being issued a low performance rating (*Id*. at ¶ 69).

Count Two also realleges virtually every previous allegation in the SAC. (*Id*. at ¶ 77). Count Two is a retaliation claim that not only is brought under two different statutes -- Tile VII and Section 1981 (*Id*. at 12) -- but also is based on numerous alleged retaliatory adverse employment actions:

1. LeStourgeon ignored Plaintiff's standard request for LeStourgeon to be her coach evaluator (*Id*. at ¶ 80);
2. LeStourgeon failed to support and guide Plaintiff daily (*Id*. at ¶ 81);
3. LeStourgeon failed to give Plaintiff interim and final official EOPF evaluations in 2017 and 2018 (*Id*. at ¶ 82);

4. LeStourgeon refused to assist Plaintiff in the completion of her Performance Task Books (*Id*. at ¶ 83); and

5. LeStourgeon issued Plaintiff a negative evaluation in 2018 (*Id*. at ¶ 83).

Similarly, Count Three realleges virtually every previous allegation in the SAC. (*Id*. at ¶ 99). Count Three is a Title VII hostile work environment claim, but Plaintiff has alleged two different types of hostile environment within this single count: one based on race and another based on retaliation. (*Id*. at16).

This court has already addressed the shotgun nature of Plaintiff's Complaints and required her to replead. (Docs. # 16, 29). The court explained the four types of shotgun pleadings:

> There are four basic categories of shotgun pleadings: 1) those in which "each count adopts the allegations of all preceding counts;" 2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; 3) those that do not separate each cause of action or claim for relief into a different count; and 4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

(*See, e.g.* Doc. # 28 at 7). The court noted that Plaintiff's First Amended Complaint "still [fell] into the third category." (*Id*. at 8).

The third category is a complaint that "do[es] not separate each cause of action or claim for relief into a different count." (*Id* at 7-8). The court further noted that "[t]he Eleventh Circuit strongly encourages a 'district court that receives a shotgun pleading [to] strike it and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading.'" (*Id*. (quoting *Est. of Bass v. Regions Bank, Inc*., 947 F.3d 1352, 1356 n.3 (11th Cir. 2020)). The court concluded by ordering Plaintiff to "file a further amended Complaint which remedies the shotgun pleading issues" that the court had explained in its Memorandum Opinion. (Doc. # 29).

There is more. This court specifically instructed Plaintiff that, in repleading her claims, she "should make clear the personnel action at issue in each claim rather than lumping all allegedly discriminatory acts in one claim." (Doc. # 28 at 8). Nevertheless, Plaintiff's SAC has (1) included multiple adverse employment actions in one count (Counts One and Two), (2) asserted claims under multiple statutes in one count (Count Two), and (3) brought two types of hostile environment claims (race and retaliation) under one count (Count Three). (Doc. # 32 at ¶¶ 62-110).

The Eleventh Circuit has held that, "[i]n the special circumstance of non-merits dismissals on shotgun pleading grounds, we have required district courts to *sua sponte* allow a litigant *one* chance to remedy such deficiencies." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (emphasis added). Here, Plaintiff has already had two such chances (Docs. # 17), and the third iteration of her Complaint quite plainly remains a shotgun pleading (Doc. # 32 at ¶¶ 62-110).

The Eleventh Circuit has also "held that a 'district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.'" *Vibe Micro*, 878 F.3d at 1295 (quoting *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc)). "After [] one [] opportunity to replead comes and goes, *Daewoo's* rule operates to allow the district court to dismiss with prejudice if the party has still neither filed a compliant pleading nor asked for leave to amend." (*Id.* (citing *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006)). However, even though it was squarely within its discretion, the court did not dismiss after Plaintiff's second failure to comply with well-settled pleading requirements. To the contrary, Plaintiff was given a third chance. Nevertheless, Plaintiff still has not filed a compliant Complaint, and has not asked for another opportunity to replead in response

8

to Defendant's Motion to Dismiss her SAC. Therefore, Plaintiff's SAC is due to be dismissed with prejudice due to her failure to file a compliant pleading or ask for leave to amend. *Daewoo*, 314 F.3d at 542.

### B. Plaintiff's Complaint Contains Other Material Deficiencies

In addition to being a shotgun pleading, Plaintiff's SAC contains other material deficiencies. The court addresses those below.

#### 1. Plaintiff's Section 1981 Claim Fails to State a Claim Against Defendant

Count Two of Plaintiff's SAC asserts a retaliation claim against Defendant under Section 1981. A "plaintiff cannot maintain a § 1981[] claim against a federal defendant acting under color of federal law[.]" *Laquita v. Collins*, 2022 WL 20401472, at *3 (N.D. Fla. Oct. 13, 2022), *report and recommendation adopted sub nom. Davis-Harrison v. Collins*, 2022 WL 20401471 (N.D. Fla. Nov. 2, 2022) (quoting *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998)). Defendant is a federal defendant and Plaintiff's claims are asserted under federal statutes. Therefore, Plaintiff's § 1981 claim in Count II is due to be dismissed with prejudice for this additional reason.

#### 2. Plaintiff Failed to Exhaust Her Non-Promotion Claim

Plaintiff's March 2018 EEO Complaint is unclear about the challenged employment actions she complained about. (Doc. # 5 at 9). Plaintiff argues that, although her initial EEO Complaint did not allege all of the claims asserted in her judicial Complaint here, she exhausted the additional claims by amendment during the administrative stage. (Doc. # 35 at 8).

This court has already rejected this precise argument. "A court may find a claim is exhausted only when it could 'reasonably be expected to grow out of the charge of discrimination.'" (Doc. # 16 at 8-9 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970)). As the court further explained:

9

> The procedures established under the regulations prescribe "rigorous administrative exhaustion requirement[s] and time limitations" as a "precondition" to a federal employee's right to file a Title VII action in federal court. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976). The scope of an employment discrimination complaint is determined by the EEOC charge and investigation. *See Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). A plaintiff is barred from pursuing any claim in a federal court action that is not "like or related" to the claims asserted by the plaintiff in her EEO Complaint, or that could not reasonably be expected to arise during the course of the EEOC investigation. *See Sanchez*, 431 F.2d at 466-67. "[J]udicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but [] allegations of new acts of discrimination are inappropriate." *Gregory*, 355 F.3d at 1279-80.

(Doc. # 16 at 9).

The August 29, 2022 EEOC Decision addressed the unfavorable evaluation and, in the alternative, a potential harassment claim. (Doc. # 1-1 at 4). But, it made no mention of a non-promotion claim. (*Id*. at 4-6). Therefore, to the extent Plaintiff's SAC asserts a disparate treatment or retaliation claim based on a non-promotion in Counts One and Two, those claims are due to be dismissed for failure to administratively exhaust that issue.

### 3. Plaintiff Has Not Sufficiently Alleged Adverse Employment Actions to Support Her Discrimination Claim in Count One

Count One of the SAC concerns the following employment actions: not being afforded education or training (Doc. # at ¶ 66); being subjected to significant change in duties, responsibilities, or working conditions (*Id*. at ¶ 67); not being selected for a promotion (*Id*. at ¶ 68); and being issued a low performance rating (*Id*. at ¶ 69). Notably, Plaintiff does not allege that she applied for a promotion and does not assert she was denied that opportunity. (Doc. # 32, *generally*).

The court has concerns about whether these alleged adverse employment actions are even actionable. As the Eleventh Circuit explained in *Howard v. Walgreen Co*.,

> Not all employer actions that negatively impact an employee qualify as "adverse employment actions." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001)[, *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*,

10

> 548 U.S. 53 (2006)]. Rather, only those employment actions that result in "a serious and material change in the terms, conditions, or privileges of employment" will suffice. *Id*. at 1239 (emphasis in original). "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id*.

605 F.3d 1239, 1244 (11th Cir. 2010).[1] The Eleventh Circuit held in *Howard*, that a supervisor's telephone message informing the plaintiff his job was in jeopardy fell "well short of an adverse action," as the plaintiff's employment status did not change, and he did not suffer any other tangible consequences. 605 F.3d at 1245.

In *Akins v. Fulton Cty., Ga*., 420 F.3d 1293 (11th Cir. 2005), the Eleventh Circuit concluded that "unwarranted reprimands, a negative work evaluation, threat of job loss through dissolution of the contracting division, threat of suspension without pay, exclusion from meetings, [and] removal of job duties (followed by reprimands for not completing that work)" did not constitute adverse employment actions, either singly or in the aggregate, as they did not materially affect the plaintiff's compensation or job status. *Id*. at 1301. In *Cheatham v. DeKalb Cty., Georgia*, 682 F. App'x 881 (11th Cir. 2017), the Eleventh Circuit panel held that two written counseling documents did not constitute adverse employment actions, as they did not lead to "tangible job consequences." *Id*. at 889-90.

Similarly, district courts within our Circuit have held that negative comments on a performance evaluation, *Butler v. Emory Univ*., 2014 WL 12798688, at *17 (N.D. Ga. Aug. 15, 2014), *report and recommendation adopted*, 45 F. Supp. 3d 1374 (N.D. Ga. 2014), verbal and written counselings and reprimands, *White v. City of Sylvester*, 2016 WL 1270236, at *11 (M.D. Ga. Mar. 31, 2016), and disciplinary notices, *James v. Home Depot U.S.A., Inc*., 2015 WL

---

[1] This line of cases appears to explain why Plaintiff has repeatedly argued that she exhausted her administrative prerequisites as to her non-promotion claim.

13736593, at *6 (N.D. Ga. Nov. 10, 2015), *report and recommendation adopted*, No. 1:14-CV-1502-WSD, 2016 WL 2770528 (N.D. Ga. May 13, 2016), did not constitute adverse employment actions.

The issues over which Plaintiff has asserted her disparate treatment claim in Count One are not serious and material changes in her employment status, and she has not alleged tangible consequences related to these alleged actions. Therefore, for this additional reason, Count One of Plaintiff's SAC is due to be dismissed.[2]

## IV. Conclusion

For all of the foregoing reasons, the court concludes that Defendant's Motion to Dismiss (Doc. # 34) is due to be granted. A separate order will be entered.

**DONE** and **ORDERED** this March 13, 2024.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[2] This same conclusion does not apply to Plaintiff's retaliation claims. The standard for "adverse employment action" is different when analyzing Title VII's retaliation provision under 42 U.S.C. § 2000e–3(a) than it is for Title VII's substantive discrimination provision under 42 U.S.C. § 2000e–2(a). *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("[W]e conclude that Title VII's substantive provision and its antiretaliation provision are not coterminous."). "[T]he antiretaliation provision [under Title VII], unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id*. at 68. Rather, the test is whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68 (internal quotations omitted).